UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEBORA PALEN,                      : Civil Action No. 05-0353(NLH)
    Plaintiff,                     :
                                   :
  v.                               : **OPINION**
                                   :
ALCAN PACKAGING,                   :
WHEATON PLASTICS, INC.,            :
JOHN OWNERS & OPERATORS            :
(Plural 1-10),                     :
    Defendants.                    :

**APPEARANCES:**

Richard L. Press, Esquire
Press & Taglialatella, L.L.C.
23 E. Black Horse Pike
Pleasantville, NJ 08232
    *Attorney for Plaintiff*

Paul John Casteleiro, Esquire
86 Hudson Street
Hoboken, NJ 07030
    *Attorney for Defendants*

**HILLMAN**, District Judge

    This matter has come before the Court on Defendants' motion for summary judgment on Plaintiff's federal law claim, and, if granted, dismissal of the entire action for lack of subject matter jurisdiction.  For the reasons expressed below, Defendants' summary judgment motion will be granted, and the remaining counts in Plaintiff's Complaint will be dismissed.

### BACKGROUND

    Plaintiff, Debora Palen, was employed by Defendant, Alcan

Packaging, for eighteen years prior to being "downsized"[1] on February 14, 2003.  Plaintiff filed a three-count Complaint against Defendants, claiming that her termination violated the New Jersey Law Against Discrimination (NJLAD) and the Family Medical Leave Act (FMLA).  She has also asserted claims for breach of an implied contract and breach of good faith and fair dealing of Defendants' severance pay policies.  Defendants have moved for summary judgment on Plaintiff's FMLA claim, and if that motion is granted, Defendants have requested dismissal of the action for lack of subject matter jurisdiction.  In the event that the Court retains subject matter jurisdiction, Defendants also seek judgment in their favor on Plaintiff's NJLAD claim.  Plaintiff opposes Defendants' requested relief.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.

---

[1]Because the parties contest whether Plaintiff was "laid off" because of the company's fiscal problems, or "terminated" for improper reasons, the terms "downsized," "laid off," and "terminated," and their different variations, all connote Plaintiff's release from employment, and the use of one term over the other does not suggest support for either parties' position.

P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.     Plaintiff's FMLA Claim**

From June 29, 2002 to November 18, 2002, Plaintiff had been on FMLA leave and disability as a result of toe surgery. Plaintiff's Complaint can be construed as asserting three claims with regard to her FMLA leave: 1) Plaintiff was "denied any later family medical leave," and "refused any extended medical leave beyond the 12 weeks of family leave" (Compl. ¶ 3, Count Two); 2) Plaintiff was "selected for downsizing on February 14, 2003" because she believed "she was retaliated against for . . . requesting additional family medical leave" (id. ¶ 6, Count Two); and 3) Plaintiff was "selected for downsizing on February 14, 2003" because she believed "she was retaliated against for having taken family medical leave" (id.).  Thus, it must be determined whether Defendants are entitled to summary judgment on any of these FMLA claims.

The FMLA affords eligible employees "a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Following FMLA leave, an employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions.  See id. § 2614(a)(1).  The FMLA provides relief for interference of these FMLA rights as well as for retaliation for using these FMLA rights.

4

### 1. *Interference claim*

Plaintiff's first FMLA claim can be construed as an interference claim. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). Such a claim is typically referred to as an "interference" claim. Sommer v. The Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006). To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer, 461 F.3d at 399 (citation omitted). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. (citation omitted).

Here, Plaintiff claims that she was "denied any later family medical leave," and "refused any extended medical leave beyond the 12 weeks of family leave," but Plaintiff has cited to no authority that requires an employer to provide more than twelve weeks of leave. Thus, as a matter of law, this claim must fail.

### 2. *Retaliation claim*

Plaintiff's other two FMLA claims can be construed as retaliation claims. The FMLA regulations provide:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay

5

>would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c).

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that:

   (1) she took FMLA leave,

   (2) she suffered an adverse employment decision, and

   (3) the adverse decision was causally related to her leave.

Lepore v. Lanvision Systems, Inc., 113 Fed. Appx. 449, 452, 2004 WL 2360994, *2 (3d Cir. 2004) (citing Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004)).

Temporal proximity that is "unduly suggestive" satisfies the causation element of a plaintiff's *prima facie* case at the summary judgment stage. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)); see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003)("Even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.")).  Using time to satisfy the causation element of the *prima facie* case, however, requires consideration "with a careful eye to the specific facts and circumstances

encountered." Farrell, 206 F.3d at 279 (citing Kachmar v. SunGard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997)). "There is clearly a difference between two days and nineteen months." Id. (citations omitted); see also Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (holding that two months was not "unduly suggestive"); Thomas, 351 F.3d at 114 (holding that three weeks was not "unduly suggestive").

If the timing of the events is not "unduly suggestive," the plaintiff can still show a causal link with other circumstantial evidence, such as evidence of ongoing antagonism or inconsistent reasons for terminating the employee. Id. at 280-81 (citing cases). Id. at 280 n.15. Once a plaintiff makes out a *prima facie* case, the usual McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden shifting framework is implicated. Id. (citing Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001)).

Here, neither of Plaintiff's retaliation claims establish a *prima facie* case. First, Plaintiff claims that she was selected for downsizing because she requested additional FMLA leave. In addition to the fact that she has cited no authority requiring her employer to provide her with additional FMLA leave, Plaintiff's own deposition testimony refutes this claim. When questioned about whether she ever asked her employer for additional FMLA leave, either while she was on FMLA leave or after she returned to work, Plaintiff answered that she had not. (Pl.'s Dep. at 72-73.) Because Plaintiff never asked for

7

additional leave, she cannot claim that she was terminated for making such a request.

Second, Plaintiff claims that she was selected for downsizing because she took FMLA leave. Plaintiff returned from FMLA leave on November 18, 2002, and was terminated from employment on February 14, 2003. The three months between her return from FMLA leave and her downsizing is not, by itself, unusually suggestive that her adverse employment action was causally related to her leave. See Williams, 380 F.3d at 760; Thomas, 351 F.3d at 114. Thus, it is Plaintiff's burden to prove the causal link with other circumstantial evidence.

Plaintiff has failed to meet her burden. Defendants present testimony of Alcan Packaging employee Jack Maust, who, with a human resources employee, Pamela Shapiro,[2] determined which employees were to be laid off due to lack of business.[3] (Def. Ex. B, Maust Dep. at 10.) Maust stated that in order to

---

[2]Shapiro testified that she did not consider employees' attendance in determining which employees to lay off. (Def. Ex. F, Shapiro Dep. at 20.)

[3]Plaintiff disputes that there was a lack of business that necessitated lay offs. Defendant has submitted evidence that its sales had declined from 2000 through 2003, seven employees plant-wide had been laid off through August 2003, and it had not hired any new employees from the date of Plaintiff's lay off until September 7, 2004, when one individual was hired. (See Def.'s Exs. C and D.) Plaintiff has not presented any evidence to refute Defendant's evidence showing a decline in sales. Because Plaintiff has not sufficiently identified specific facts and affirmative evidence that contradict those offered by Defendant, she has failed to met her summary judgment burden on this issue.

determine which employees were to be laid off, he looked at job performance, ability to teamwork, any verbal warnings, and attendance.  (Id. at 11.)  When asked what time frame Maust considered the employees' attendance, Maust stated that he looked at attendance from January 2003 and February 2003.  (Id. at 12.)  When asked about Plaintiff's attendance during those months, Maust stated that he did not see anything wrong with her attendance, and he "fell back to the other criteria to select" Plaintiff for the layoff.  (Id. at 13.)

Plaintiff argues that it is "an incredible statement" that Maust only looked at her attendance in January and February of 2003 and not at her FMLA absence.  Plaintiff contends that the issue of whether Maust considered her FMLA leave in determining to select her for termination is a jury question.

Plaintiff's argument, however, simply restates her claim that she was terminated for taking FMLA leave, and it does not set forth any evidence, circumstantial or otherwise, to support the causation element of her *prima facie* case.  Further, with this argument, Plaintiff is attempting to present as evidence the inference that because Maust said he only considered Plaintiff's absences in January and February 2003, Maust actually considered Plaintiff's FMLA leave from June 2002 through November 2002 when deciding to terminate her.  Plaintiff is also attempting to present as evidence the inference that although Maust stated that he did not consider Plaintiff's attendance in the decision to

9

terminate her because Plaintiff had no attendance problems during January and February 2003, Maust actually considered her FMLA leave. These types of inferences are not evidence of causation.

Plaintiff has submitted no other arguments or evidence to support that she was terminated because she used FMLA leave. Plaintiff has described incidents of alleged sexual harassment and hostile work environment, as well as alleged a claim for gender discrimination because she was the only person to be laid off in her department, but she has not described any incidents relating to her leave. Her sole argument for proving that she was terminated because of her FMLA leave is Maust's testimony that he did not consider her FMLA leave. As stated above, this argument is not enough to establish her *prima facie* case. In order to withstand a properly supported motion for summary judgment, Plaintiff cannot just rest upon mere allegations, general denials, or vague statements, and instead must identify specific facts and affirmative evidence that contradict those offered by Defendants. Plaintiff has failed to do this. As a result, Defendants are entitled to summary judgment on Plaintiff's FMLA claim.

### C. Plaintiff's Remaining Claims

With Plaintiff's FMLA claim now dismissed, the claims remaining in this action arise under New Jersey law. Defendants have asked the Court to refrain from exercising supplemental

jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367, which provides, in relevant part,

> (a) . . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
> . . .
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>>
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>>
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, Defendants have moved for summary judgment on Plaintiff's NJLAD claim in the event that the Court retains supplemental jurisdiction over that claim, but they have not moved for summary judgment on Plaintiff's other state law claims for breach of implied contract and breach of the duty of good faith and fair dealing.  Defendants have also pointed out that Plaintiff has raised for the first time in her opposition papers additional claims for gender harassment that were not included in Plaintiff's Complaint, and these state law claims are also not addressed in Defendants' summary judgment motion.

Consequently, because Plaintiff's case is now one that

solely concerns state law, and the Court is unable to fully resolve those claims on Defendants' instant motion, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997) (holding that the decision to decline supplemental jurisdiction is committed to the sound discretion of the district court). Those claims will be dismissed without prejudice to Plaintiff's right to bring them in state court.  See 28 U.S.C. § 1367(d); Gresh v. Godshall, 170 Fed. Appx. 217, 221 (3d Cir. 2006).

## **CONCLUSION**

For the reasons expressed above, Defendants are entitled to summary judgment in their favor on Plaintiff's FMLA claim (Count Two).  Plaintiff's remaining state law claims are dismissed without prejudice.

Dated: June 14, 2007               s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.